J.W. Hicks, Inc. Mr. Dunne. Good morning, Your Honor. May it please the Court, this is a case where below the district applied file wrapper estoppel to preclude any application of doctrinal equivalence. We believe that was erroneous. The patent relates to a slide gate, which is used to close the opening in a container from molten metal, and the slide, the container will have an opening or a nozzle. The slide gate will have a refractory plate, which will slide in position to either, which also has a nozzle, to align the nozzles to open the container or slide the gates away, slide the refractory plates away so the container is sealed. Because of the molten metal, the gates have to be very tightly, with a lot of pressure, secured together so there's no leakage, and they have to be slidable. So those are the technical problems that need to be solved. In this particular patent, the invention was to provide slide gates which have guide means, which in the pending claims are recited as rollers, and tracks for the rollers on the slides or on the mounting means. It was very clear that the mounting means need to be mounted directly to the container and not to a frame that had been used in the prior art. So in order to do this, the mounting means were multiplied, so there were two mounting means or two mounting components on each side of the slide gate. And each of these mounting components had a guide track and a slide, a guide element to ride on the guide track to move the slide plates. The claims were initially presented in European form with a characterization clause reciting guide means and a track, and the claim as originally filed, originally presented to the examiner, required that the guide track or the guide means would be either on the slider member or on the housing, or vice versa, either way. Can I just interrupt you for, I'm just curious about something. Claim one, the claim that's before us, the claim guide tracks are on the slider unit, right? Yes, Your Honor. And then the so-called guide element, i.e. the slide rollers, are on the housing portion. Correct. Right? And then we look at the defendant's product, Hick's product, they have that in reverse. Reverse, correct. So the guide tracks are on the housing portion, and the slider rollers guide elements are on the slider unit, right? Correct. They're reversed. They're reversed. Correct. I'm wondering why you didn't assert your claim 15 in this patent, which has the guide tracks on the housing portion and the guide elements, slide rollers, on the slider unit. Then you wouldn't be in this sort of contorted situation of trying to rely on doctorate equivalents for a reverse orientation with claim one. You could just seamlessly and smoothly rely on claim 15, which has the actual orientation of the defendant's products. In that respect, yes, Your Honor. Claim 15 also has that the spring structure is located on the actual slider. That's part of figure five. And that's what claim 15, which was claim 29 in the application, requires the mounting components of the spring elements, which keep the plates tied together, to be on the slider. So you have to have that equivalence where the mounting components would have been or the spring elements would have been on the housing. I'm sorry. Just for my own curiosity, can you show me where in claim one and claim 15 the spring elements are in different places? In claim 15, you have the probability of mounting components. And then you have a first end secured to the slider element, spring elements for pressing said refractory valve plate and the other valve plate together, the second opposite end, and the guide element on the second end for riding on the guide tracks. I read that. Which claim are we looking at? Claim one or claim 15? Claim 15. Okay, claim 15, the spring elements. So you have the first end, the mounting components, which include these spring elements. The first end secured to the slider unit. Okay, then spring elements keep the plates together. The second opposite end, and then the guide element on the second opposite end for riding on the guide tracks on the housing portion. So you have the spring elements have one end secured to the slider unit. And that would be different from the accused device. It's also different from the embodiment shown in figure one. So we would have an equivalence argument on that part. It doesn't say where the spring elements are attached to. I'm sorry, that was quite a while ago through this analysis. But it was the first end secured to the slider unit and the second end opposite the first end. That's required on the mounting components. And then the guide element or the rollers are on the second end for riding on the respective one of the guide tracks, which are on the housing. But the second end has to be secured to the slider movement. And we read that as being directed to the embodiment in figure five, which is also the reverse of DQ's product. Okay. That was the analysis before the complaint was filed. Okay, to go quickly, what happened below was the judge, I believe, made an erroneous finding where he said the claim was narrowed with this specific location of either the guide tracks or the guide elements that were specifically recited, that that narrowing amendment, which we admit was narrowing, was made for the purpose of avoiding the prior art. I think the file wrapper, the remarks made to the patent office and the patent office office action make it clear that the prior art cited required the guide tracks or the guide elements to be either on the slider or on the housing portion. Either alternative was within the prior art. There was also a 112 rejection, right? Yeah, 112 rejection. An indefiniteness rejection. There was an indefinite rejection, which was not related to the equivalence. But you then chose to split up a garbled claim that was covering two embodiments into two claims, with each claim covering one of the two embodiments, right? Correct, absolutely. And so that's in response to a patentability rejection, you made this amendment and you chose to figure out a way to overcome the indefiniteness rejection in a way that ended up narrowing the claims to individual embodiments. No, there was no indefinite rejection which required the either or. There was no rejection that the alternative arrangement was indefinite. If there had been, I would say absolutely. Then electing one or the other would have been done to patentability. That was my reading of the basis for the indefiniteness rejection. What's yours? There were specific questions of some of the indefinites, but the examiner never said. He goes in specific claims, all the claims. He didn't know what the term the latter is. He had some about what may be in claim one line three. There's no indication what component of the sliding unit is supposed to be longitudinally movable with respect to clarification. That had nothing to do with the equivalence at issue. Claim one line four, the term may be is unclear. Clarification is claim two. The vowel plate is singular. What claim one, you know, these are going to dependent claims. So there's no claim rejection under one, which there could have been. I was an examiner. I could have made that rejection. I said, you can't claim an alternative. But the examiner never made that 112 rejection. You can't claim the alternative. He was fine with the alternative claim. And then the claim was narrowed to pick one. I agree with that, to pick one for one claim section and another for the other claim section. The claim was also narrowed to have the four components, that the mounting means would have four components, two on each side, which is what is not shown in any of the prior art. Both the examiner stated the prior art shows both alternatives. That's very clear in the 102 rejection. There is no rejection under 112 because the alternative arrangement is indefinite. I agree. If that rejection had been made, there would have clearly been a reason for patentability for the narrowing amendment and it would be a stopper. That rejection wasn't made. The examiner was fine with the alternative arrangement. He actually found the alternative arrangements in the prior art. Although the prior art, only one patent has rollers, it had the guide element and guide and the tracks in the prior art, either on the housing or on the slider. That was clear. But the examiner found the alternatives in the prior art. The claim was narrowed, okay, in really two ways. Claim one, or claim 15 application, which is claim one and the patent was narrowed to specifically recite the guide tracks on the slider and the guide elements on the housing component. But it was also amended to require that the mounting components had two units on each side, so there would be four. And this is the mounting components having these rollers and guide tracks and springs to get the plates tightly together. It was this arrangement of two per side on the slider unit, which gave the pressure to have the tight seal that would be necessary between the two refractory plates to stop molten metal from leaking. That's what the patent was about, was to not have the frame which had been required previously to keep this pressure intact, but instead we're going to use four individual mounting components spaced on opposite, two on each side, spaced so that we could have this equilateral pressure all the way around the plate. And that's what the remarks say. The remarks are very clear that the invention was having the guide tracks or the guide elements on either the slider or the housing. Either one was part of the invention. That's the notice that was given to the public, but either one on the invention. Then they come right back and it says, explained in the specification the arrangement of the mounting components to have two on each side, which is also a narrowing amendment. That was the narrowing amendment which triggered the patentability. That's the feature which is not found in the art, and that's the feature that's not part of what our equivalence analysis is. So what we're with here is that the district court below said that the claims were narrowed to exclude the equivalence in order to get patentability. That's wrong. That was not the purpose of this narrowing amendment to put the guide tracks on the slider. That was not to get patentability. Guide tracks on the slider and guide elements on the housing were known in the prior art. Reversing them were known in the prior art. Either way was known in the prior art. It had nothing to do with patentability, and that finding was wrong. Now, the narrowing of the claim that got us the patentability aspect was the two on each side, which is in both Claim 1 and Claim 15, and those are the features. That's the only feature that I can say that is not found in the prior art as the mounting means being spaced in that arrangement. That's the narrowing amendment. The prior art does not show that. The accused device does. The only difference is the equivalence issue. I think we've clearly shown from the file wrapper alone that the narrowing amendment of where the guide tracks were and where the guide elements were was not made for a reason relating to patentability. And we stated in the file history that our invention included either arrangement. We gave notice to the public. Anyone reading the file history would say the invention included either arrangement. Mr. Brown. Good morning, and may it please the Court. The public record here is clear, unmistakable, and controlling. The patent applicant successfully argued its claims were allowable over the prior art following narrowing amendments, and this became a classic case of prosecution history estoppel when the patent owner had to resort to the doctrine of equivalence in court because the very limitations narrowed during prosecution are not literally present in the accused device. Summary judgment should be affirmed under these circumstances. The narrowing of the claim is clear. It was narrowed during prosecution. There's no argument at this court to the contrary. So the question then becomes, is that narrowing related to patentability? And we look to the patent applicant's own words, the public record, which confirms that the narrowing amendment was for patentability purposes. And if you look to the file history, pages 248 through 250, repeated references as to why the substituted claim, the narrowed claim, is distinguishable from the prior art. The Hulterman, Klebat, Plattner, I'm not going to read all of the quotes, they're in the record, but each time there's a reference made to the difference being the mounting components, the guide elements, at least with respect to two of those references, and the configuration as being arranged, as recited in the independent claims. So what the public at large is entitled to glean from that record is that when you arranged those limitations in a specific way in what issued as Claim 1, you did it for purposes of getting around the prior art. And then the summary that appears at page 250 is itself telling, as discussed above, the Hulterman reference, the Klebat reference, and the Plattner reference do not disclose or suggest a plurality of mounting components arranged as recited in Claims 15-40. Accordingly, it is respectfully submitted that new independent claims 15 and 29, and the claims that depend from them, are clearly patentable over the prior art of record. The focus is on the mounting components, the guide elements, and the arrangement of those. And it is clear that the arrangement in the Hicks device is different. It is different. And Judge Chen, with respect to your question about the issued Claim 15, what's different primarily here is the mounting component itself. The claims require that the mounting component have two ends, one affixed in Claim 1 to the housing, the second end having a guide element that then rolls in the guide track that the claim requires being affixed to the slider. In the Hicks product, the guide element, the roller, is directly fixed to the slider unit, and the tracks themselves are attached to the mounting components. It's actually a more complex arrangement in terms of how these products are actually used. Greater tolerances and better efficiency with respect to the actual product itself. But he couldn't bring Claim 15 because the key is where is the mounting component located, and he had the same issue he had with respect to Claim 1. So what I hear the arguments today being  for purposes of patentability as it relates to the location of the guide tracks and the mounting components. But that's not what the public record says. It's not what the public record reflects. And at the district court level, they tried relying upon an affidavit from a foreign patent attorney who was overseeing U.S. prosecution trying to put a spin on the file history, which is in essence what counsel does today, put a spin on that file history, which is really divorced from the plain language, the clear language that the public is entitled to rely upon. And I would also say that it's not just the location of the mounting components and the guide tracks that was important for purposes of patentability. The guide element itself was specifically highlighted when distinguishing Holterman and Klebat. And this is again at page 249 and 250. Klebat does not disclose or suggest mounting components having a spring element and a guide element in which the mounting components are arranged as recited in the independent claims. So again, that guide element, that's the nub of the issue right here in terms of what's different between the Hicks product and what was the result of the narrowing amendment here. So direct connection between the rejection, the amendment, and then now an attempt to recapture that which was given up. So in our view, public record, which is there for competitors, the public at large to rely upon, is clear. There's an argument made in the briefing regarding this cumbersome frame. The real reason that the claims were... What distinguished the invention from the prior art was the absence of this cumbersome frame. And we heard a little bit about that just briefly. But Claim 1 does not preclude the use of a frame. And more importantly, we highlight in our brief, the prior art expressly discusses the elimination of a frame as the advantages of its invention. This was the Holterman patent at page 316 of the record. And again, now focusing on the public record, stopping the patent owner never argued, like it did with respect to the mounting components with guide elements, that this is what distinguished the claims from the prior art. And I would say that with respect to that argument, the best that Stoppik can do is say, well, the prior art's ambiguous as to this point that we want to make. But as we know, an ambiguous prior art is insufficient... I'm sorry, ambiguous file history is insufficient to overcome the presumption that exists here. So in our view, what's the scope of the estoppel? The claim was narrowed to a specific configuration of mounting components with guide elements secured to housing and guide tracks secured to the slider. The scope of estoppel as to Claim 1, at a minimum, would preclude Doctrine of Equivalence arguments with respect to any device with guide tracks secured to the housing or guide elements on the slider unit. And that is precisely the Hicks product. But your friend says the guide elements were in the prior art and that wasn't the basis for patentability. That's what the argument is made, but that's not what the record reflects. During the prosecution itself, there's no parsing of the words of the basis for overcoming the rejection in that fashion. So again, what does the public record say? And, Your Honor, I would say that the EMD in Millipore case came out in 2014. The district court cited it, and I should have cited it more heavily in our brief, but didn't. It is directly on point here. And in there, a claim was amended to require the existing seal have first and second ends with distinct structural elements. And the applicant said the purpose of the amendment was to make Claim 1 allowable and distinguishable over the cited references. Court said, actually reversed the district court, and it concluded that the limitation was narrow to overcome a previous rejection. And the same is true here. After noting the prior art rejection, Stopping says claims have been drafted to clarify the arrangement of the mounted components and slider unit. Thus, for reasons discussed below, it's respectfully submitted new claims are clearly patentable over the prior art of record. Like the applicant or patent owner in EMD Millipore, Stopping here chose not to rely upon any of the three festo exceptions to overcome the presumption. There's no effort made by them to argue before this court the tangential relation exception. They argued at the district court and lost, and it's our view that having not raised it now that that issue has been waived. I will also just address a point that was in Stopping's reply brief. They made a hypothetical claim analysis. So the first time that that's appeared either at the district court level or before this court, so I didn't have an opportunity to respond. And they would suggest that their proposed hypothetical claim would avoid the prior art while at the same time encompassing the accused device. And respectfully, your honors, that's too little too late. First, an argument raised in a reply brief has been waived. We've cited those cases, SmithKline and cross-medical cases. But even if it were properly raised, the analysis must be properly performed. And that would include an obvious misanalysis that simply has not been done here. Stopping made no attempt to explain how that hypothetical claim would avoid the prior art under 102 or 103. And this court has directly indicated that a hypothetical claim analysis cannot operate to the exclusion of the doctrine of prosecution history estoppel or the all elements rule, both of which serve to limit the doctrine of equivalence. That's the Moore USA case, 229 F 3rd, 1091. So based on the public record, based on what the public is entitled to rely upon, we believe that the district court got it right, that prosecution history estoppel applies. And we ask that the entry of summary judgment of non-infringement be affirmed. Thank you, your honors. Thank you. Thank you, Mr. Stone. Yes, your honors. Very quickly, in the remarks that were filed, it was clearly stated that the prior art does not show the arrangements for the guide and the tracts, as shown in claims 15 and 29, which became 1 and 15. So at every step where they say, well, reference doesn't disclose, they discuss the alternative arrangement, that the reference doesn't disclose. The file history, the remarks do say, as explained in the specification, the arrangement of the sliding gate of the present invention eliminates the need for a large and cumbersome frame, which increases size cost. In addition, the arrangement of the mounting components with respect to refractory valve plates in the spring element of each allows the valve plate to be closely held together during operation. Again, the narrowing of the claims, which allow for patentability, and the only reason why Claim 1, for example, even defines over the platen reference, which is on page, especially figure 3 on the appendix A332. That's a prior reference that was cited by the examiner. The only way Claim 1 defines over that patent is when you look at the four spaced components that are provided. That is the arrangement which was added to Claim 1, and actually the new Claim 15. It was a narrowing amendment, and that is the narrowing amendment which defines over the cited R. It's the only narrowing amendment which defines over the cited R. So the patent office examiner found either or was present in the prior R. The applicant always said, our invention includes either or, either as in Claim 15 or in Claim 29, which became 1 in 15, the patent. And clearly in the response says, it's the arrangement of the mounting components, which is two on a side for a total of four, which makes this thing work. And that's the defining feature over the platen reference. That's why the patent is patentable, and that's not relevant to the equivalence. I'm sorry I came over. I apologize. OK. Thank you. Thank you, Bill. The case is taken under submission. Thank you.